Good morning, Your Honor. My name is Brian Reyna with the Office of the State Appellate Defender, and I'm representing the appellant, Ryan Mitchell. I apologize off the bat. I'm having some technical difficulties with my camera. I just did an argument last week and I haven't had any problems. I've done two on Zoom, but I can't get it to unlock right now, so I hope... Well, we could hear you. Okay. Good morning, Your Honors. Daniel Pivovarczyk on behalf of the people of the state of Illinois. Okay. Now for the appellant, do you want to reserve some time for a rebuttal? Yes, please, Your Honor. Five minutes or so. Okay. Let's proceed. Your Honors, the trial court in this case erred in denying a motion to quash, arrest, and suppress evidence because the police lack both reasonable suspicion to conduct a hearing. The evidence established that Ryan Mitchell was a passenger in a car, stopped for a minor traffic violation. A police officer testified that as he approached the passenger side of the car, he saw Mitchell, who was in the back passenger seat, with his hand in his pocket. The officer stated that Mitchell removed his hand at the officer's request, although not until the officer asked several times. The officer did not order Mitchell out of the car. Counsel, I have a quick question regarding the facts. So this happened at 1230 in the morning, correct? Yes, Your Honor. That's correct. All right. Was there any... I didn't note it in the record, but I just wanted to make sure. Were there any questions regarding the lighting situation around the vehicle at the time? No. No, Your Honor. There was no evidence regarding the lighting situation. Okay. I'm sorry. Go ahead. That's okay. Thank you, Your Honor. Let me ask you this. When the stop was made, how many people were in that vehicle? Your Honor, there were three people in the vehicle at the time of the stop. There was the driver, and then a front passenger, and then my client, Ryan Mitchell, was the back passenger. Okay. And didn't the police officer testify that he appeared to be very nervous? Well, yes, Your Honor. The officer did testify that he appeared to be nervous while in the car. I'm sorry. Go ahead. He appeared to be nervous. He had his hand in his pocket. And wouldn't that give a reasonable suspicion to an officer that maybe he had a firearm or had a worry about his safety? No, Your Honor, particularly on the facts of this case. And that is because, first, I mean, this court has held several times that nervousness is not enough to justify reasonable suspicion, nor the same with having your hand in a pocket. The nervousness described in this case is particularly innocuous because it is based on the fact that Mitchell was looking at the officers, which is basically the most prudent thing he could have done in that circumstance. That is not indicative at all of criminal activity, nor is having a hand in a pocket. I'm not going to go into that in terms of the reasonable suspicion analysis, because while we are looking at the totality of the circumstances, if we have two facts that don't add up to any indication that Mitchell is armed and dangerous or criminal activity, there is no reasonable suspicion at that point. Didn't he decline several requests to remove his hand from his pocket? According to the officer, Mitchell didn't comply with his request until he was asked three or four times. That testimony, however, was contradicted by the testimony of the driver. And the officer admitted Mitchell did take his hand out of his pocket. I realize I didn't get into this in the briefs, but to whatever extent the court could find that Mitchell refused to remove his hand, that has also been found not on its own to constitute reasonable suspicion. But the officer himself here did admit that Mitchell removed his hands and that he was asking Mitchell to remove his hands because he needed to see them to ensure his own safety. So once the hands were removed, the officer had the assurance he was looking for. He admitted he didn't bulge or anything else indicating Mitchell might have a weapon. Additionally, the officer didn't describe any suspicious activity related to Mitchell's hands or his demeanor once Mitchell was outside of the car. I mean, the officer had the opportunity when he approached, if he had a reasonable apprehension for his safety of ordering Mitchell out of the car, he declined to do that until he found out the driver was uninsured and driving on a revoked license. And at that point, all of the occupants were ordered out of the car and Mitchell was immediately frisked. Let me ask you a quick here with regards to the third person in the vehicle. What do we know about this person? Did this person testify at trial as well? I know, your honor. The only testimony here was from the pre-trial suppression hearing, which has been stipulated for the purposes of trial. And the driver testified as well as the officer, but the third passenger did not testify. Okay. Making matters worse, police did not develop reasonable suspicion or probable cause following the pat down. After stealing a gun and obtaining a statement from Mitchell that the officer believed confirmed the presence of a gun, the officer immediately placed Mitchell in handcuffs, reached into his pocket and confiscated the gun. The officer asked no questions and conducted no investigation regarding Mitchell's entitlement to possess the gun. So while the presence of the gun provided reason to believe Mitchell was armed and potentially dangerous, it failed to link him to any criminal activity. So the officers at that point would have had reasonable reason to pick up Mitchell and keep him detained while they investigated the potential illegality of the gun. However, there was no basis to support the search for Mitchell's person and the confiscation of the gun. And that is because there was no reasonable suspicion that Mitchell had committed a crime or was about to at that time. But what wasn't the justification for the search with regards to the police officer's safety, as well as the others that were in the vehicle at the time? Your Honor, are you asking about the frisk or the taking of the gun? Asking for the frisk wasn't a justification for the frisk. The fact that the officer was concerned for his safety, his partner's safety, and for the other people that were in the vehicle. Right. The officer testified that that was the reason for the frisk. And my first argument to that is that the mere fact of having his hand in his pocket while in the car and slow compliance with the request to remove his hand didn't rise to the level of suspicion required to give the officer fear for safety at that point. However, if this court disagrees, even after the frisk, once the officer believed there was a gun, the officer still didn't have reasonable suspicion to believe Mitchell had committed a crime or was about to commit a crime. So the confiscation of the gun under this court's opinion and plunder was still illegal at that point. I just want to ask, because I didn't really get that from your earlier argument. Are you saying that once the officer feels the gun in the guy's pocket, he has to let the guy keep the gun while he investigates whether or not the guy actually has the right to have a gun before he can seize the gun? Well, yes, Your Honor, because the point of the frisk is for the officer's safety. So I'm not saying that there's no value to the discovery of the gun and that the officer at that point is justified in keeping Mitchell in handcuffs, so he cannot use the gun. And the investigation that needs to occur at that point is simply, do you have a FOIA card? Do you have an open brief and plunder? The officer still has the duty to ask those questions. Let me ask you this, because the record seems to be silent on this. So after they find a weapon on the defendant, do the officers continue searching the vehicle or the other occupants of the vehicle? Your Honor, I don't believe so, that the other occupants were searched. Uh, I thought you said after, but I don't, I don't believe before or after. Okay. So in the absence of reasonable suspicion or probable cause, the trial court erred in denying counsel's motion to suppress. The state dispute that the gun must have been suppressed if it were recovered illegally or that it would have been unable to prosecute the case in the absence of the gun. As such, this court can reverse the trial court's ruling, suppress the gun, and reverse Mitchell's conviction. Okay, any further questions by any? No. Okay, let's hear from the state. May it please the court. Defendants' claims fail for three reasons. First, the defendant's protective pat-down occurred within the scope of an undeniably valid traffic stop. Second, Officer Arnolfo Gomez reasonably suspected that the defendant was armed and dangerous, and third, the outcome of the pat-down provided probable cause for the defendant's arrest. First, the protective pat-down occurred within the scope of the initial traffic stop. There's no dispute that at the beginning of this case, it started with a completely legal traffic stop. As a passenger in a stopped vehicle, the defendant could be lawfully detained throughout the time required by the officers to carry out the tasks tied to the traffic infraction. Moreover, as a passenger in a stopped vehicle, the defendant could be lawfully required to exit that vehicle. Officer Gomez and his partner were still very early in the process of dealing with the driver's protective pat-down. The impound process and the issuance of citations still remain to be done. The officers had just learned that the defendant's driver's license was suspended and that her vehicle was uninsured. Because of this, impoundment was statutorily mandated under 625 ILCS 5-6303E. The first step in that statutorily mandated impoundment was to remove the occupants from the vehicle, and it was at this point that the protective pat-down was conducted. Thus, ordering the defendant to exit the vehicle was not a custodial arrest. Secondly, the officer reasonably suspected that the defendant was armed and dangerous. Officer Gomez clearly and credibly articulated specific circumstances which led him to pat the defendant down, and these are facts that the trial court accepted. Those findings that Officer Gomez's testimony was clear and credible come straight from the trial court, so there isn't any debate about whether or not the defendant took four times being ordered to trial. It wasn't several times. It wasn't three or four times. The officer's testimony was that he had to tell the defendant four times to remove his right hand from his pocket before the defendant finally complied. Also, while that was happening, the defendant looked nervous and kept looking at the officers. Those are two separate things, the nervousness and the looking at the officers while his hand remained in his pocket. Opposing counsel suggests that the interpretation of nervousness was based on the fact that he was looking at the officers. That's not what the record shows. The record shows these are two separate circumstances. The defendant kept his right hand in his right pocket. The defendant was looking at the officers back and forth between the two officers, and he looked nervous. Essentially, what this was was repeated noncompliance of an officer's instruction while he was already legally detained. By not obeying the officer's instructions, the defendant was impeding a lawful traffic stop. Let me ask you this. Once he pats him down, he finds the weapon, what about the fact that there's no questions asked of the defendant at the time to determine whether or not he is legally or illegally in possession of a firearm? There's two aspects to that issue, Your Honor. The first is that the defendant has affirmatively waived that issue. It wasn't litigated at the trial level, and it wasn't brought up in the opening brief, so this is something that was first raised in the reply brief. Second of all, it is a meritless argument. To start out with waiver, Your Honor, you're absolutely right that the defendant argues that his arrest was not supported by probable cause because Officer Gomez did not ask him if he had a valid FOID or CCL. However, the reality of the situation is we do not know if Officer Gomez asked those questions to the defendant because the defense didn't ask about that to Officer Gomez at the hearing on the motion to quash. This issue was also not raised in the written motion to quash upon which the hearing was held, nor was it raised in the defendant's opening brief on appeal, which didn't even cite Aguilar. Simply put, this issue wasn't litigated, and the people asked this court to enforce defendant's affirmative waiver on that issue. During the motion to quash arrest, the defendant's direct examination of Officer Gomez ended with the pat-down without even getting into what was discovered. In other words, the gun was presumed to be probable cause, and the defendant argued that he was either illegally arrested before the pat-down or illegally patted down. These are also the only two issues that the defendant raised in his opening brief. This new issue was first raised as an afterthought in the defendant's amended motion to reconsider the denial of his motion to quash arrest. However, at that time, he did not move in the trial court to reopen his case to present any evidence in support of that new issue. Of course, the Illinois Supreme Court has repeatedly recognized that raising new factual theories on appeal deprives the formerly prevailing party of the opportunity to present evidence on that point. I would just emphasize that Officer Gomez was never asked if he asked the defendant if he had a valid FOID or if he had concealed carry license. Moreover, forfeiture principles limit appellate review to issues of significance, and here the trial court, trial counsel, did not consider this issue significant. That's absolutely clear from how it was handled, by which I mean that it was not litigated. There's no claim of ineffective assistance of counsel before this court, so we have to presume that the trial counsel did not pursue this particular issue for good reason, and the record supports that presumption by showing that this argument is meritless, and that brings me, Your Honor, to the second point, which is what we know from the record. What we know from the record is that when Officer Gomez felt that gun in the defendant's pocket, he asked, What's in your pocket? And instead of saying, My legally possessed concealed weapon, the defendant responded, What do you think it is? This confrontational response, combined with his nervousness and his noncompliance, was strong evidence that the defendant did not have that gun legally. Someone who had gone through the many steps necessary to obtain a CCL would have been quick to identify the object in his pocket as a licensed firearm. In fact, the Concealed Carry Act requires a licensee to, upon request, disclose his possession of a concealed firearm and allow the officer to secure that firearm for the duration of the stop. That's 430 ILCS 66-10 sub H, and I would mention to Your Honors that these citations that I offer were not cited in the People's Response Brief because this issue was not raised in the defense's opening brief. But in any event, Officer Gomez, at the point when he felt that gun, he was entitled to goes to Justice Lampkin's question. 725 ILCS 5-108-1.01 states that if an officer finds a weapon during a protective pat down, he may take it until the completion of the questioning, at which time he shall either return it if it is lawfully possessed or arrest the person. So, it's clear that there is no requirement that an officer feel a gun on somebody and retain that gun during the stop until they determine whether or not it's legal. The way it works is the officer confiscates the gun and then gets to determine whether or not it's legal in terms of returning it. And in this case, it's clear that the defendant is convicted felon, so he had no right to return it. Based on that, Your Honors, as long as the pat down was legal, the confiscation of the gun was also legal because that pat down is what led to feeling the gun and needing to confiscate it for the duration of the traffic stop. So, turning to the question of whether or not the pat down was legal, as I mentioned before, the trial court found that the defendant's, excuse me, that the officer's testimony was clear and credible. As was already mentioned, the officers were outnumbered and impoundment was mandated. Both of those are important things to consider in the context of the fact that this was a traffic stop, and traffic stops are especially fraught with danger to police officers. That's been frequently recognized. Also, that risk to officer safety is increased by the presence of passengers, especially when the passengers are outside of the vehicle, as in this case, because the impoundment would be necessary. I would conclude by pointing out that the defendant raised in his reply brief a number of pocket-related cases. Slaymaker, which was referenced in oral argument today, Raphael E. Shipp, Anderson, and Smith. In his reply brief, he stated that the people failed in their brief to distinguish those cases. I would just like to briefly point out that those cases, none of them involve traffic stops, which is important because, as I just mentioned, traffic stops are especially fraught with danger to police officers. Also, none of those involve defendants who are already legally detained. This is important because the standards are different. The standard for a Terry stop or a custodial arrest focus on evidence of a crime, whereas the pat-down in this case, or in any case, requires only reasonable suspicion that the defendant's armed and dangerous. The value of those cases saying that somebody keeping their hands in their pockets in winter when they're not wearing any gloves isn't evidence of a crime, isn't applicable. The only thing we're looking at here is whether or not there was a reasonable suspicion that the defendant was armed and dangerous. If there are no further questions. I just had one little question. I haven't been in the trial courts now for 11 years. I was there for 22. Every time I had one of these cases, if it was nighttime, people brought that out. It was just interesting to me that the state didn't bring it out, the judge didn't remark that this is 1230 at night and the officers are outnumbered three to two and they've got this person acting strange in the back. Are there no cases that take into consideration the time of the day again or the time of the night? Well, your honor, I agree with you that lighting conditions are going to be made part of any direct examination or cross examination. I would like to just point out that it was the defendant's burden to show that there was a violation of his fourth amendment rights to entitle him to having the firearms suppressed. So it was the defendant who led the direct examination of this officer and it was the defendant who chose what issues to focus on, what issues not to focus on. And what we do know is that it was 1230 at night and while the time of day alone isn't going to be sufficient to create a reasonable suspicion that someone's armed and dangerous, the fact that it was 30 minutes past midnight absolutely is one additional thing that can go contribute to all the officer's considerations of reasonable suspicion when determining whether or not to conduct this pat-down. And this pat-down wasn't a pat-down of everybody in the car. This was particularized, it was focused on this particular defendant. He was the first one that they had exit the vehicle. It was not the kind of automatic or routine pat-down of everyone in the vehicle that some of defendants other cases refer to. And I think based off of the limited testimony that we have from the motion of quash, the only thing we can take away from the time is that it contributes to reasonable suspicion in this case. And with that, your honors, the people asked for the reasons just stated as well as those in our brief that you affirm the trial court's rulings. Thank you. Let's hear the rebuttal. Yes, your honor. Thank you. I just want to address a few things the state's attorney said. Regarding Mitchell's nervousness, the counsel suggested this was not based on him looking at the officers. Obviously, your honors have the record. I just read it before this argument and it is directly linked. The officer says he was nervous, he kept looking at us, at me and my partner. But obviously, you have the record and can make that determination for yourselves. As far as the idea that I didn't raise this issue in the opening brief, I think that's a bit far-fetched. There's no issue raising that was in the opening reply. That was not in the motion for a new trial. While it's true, I didn't, like, flounder in the opening brief. It didn't come out until after I filed the opening brief. And just, you know, I did argue in the opening brief that the officers should have asked for the, about the legal entitlement to own a gun and that their failure to do so made the search illegal. I mean, flounder just addressed the facts of this case, you know, the nuanced facts of this case, more specifically, so it was appropriate to raise in the reply brief. And to be clear, I'm not challenging the stop of the car. The officers obviously had reasonable suspicion to believe a traffic violation had occurred. However, they exceeded the scope of the stop because at the time of the pat-down, there was still no reason to believe Mitchell had committed a crime or was about to. It's legal to possess a gun. Even if the officers believed at that time that he was armed, that wouldn't be enough to justify the confiscation of the gun. But, you know, I do stand, obviously, by the arguments I made initially that the mere fact of the hands and the alleged nervousness which occurred in the car didn't provide reason to conduct the frisk. If the officer were concerned for his safety when he saw these things happening, there's no doubt in my mind he would have said, out of the car, you need to step out. He didn't. He waited until everybody was out of the car and the officers had to wait around anyway for the car to be impounded, then conduct a further investigation. And under Searles, that isn't, that improperly prolongs the traffic stop and is illegal. If your officers, excuse me, if your honors have no further questions, I'd ask you to reverse Mr. Mitchell's conviction. Hey, any further questions? No. Okay, well, thank you very much. You gave us an interesting case and we will, of course, enter an order or an opinion shortly. And the court will be adjourned, but I ask the justices to stay for an impression conference. And I want to thank you very much for your oral arguments.